13 N.J. Super. 280 (1951)
80 A.2d 330
ANNIE H. WILCOX, PLAINTIFF,
v.
VIVIAN M. KUBLER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 23, 1951.
*282 Mr. Joseph R. Megill, attorney for the plaintiff.
Mr. John A. Reid, attorney for the defendant.
FRANCIS, J.C.C. (temporarily assigned).
Plaintiff here became vested with a life estate in the leasehold in question under the will of Annie V. Heiss, who died on May 8, 1916. Subsequently she acquired by assignment all the remainderman's rights in the leasehold, which were likewise created by the will.
In August, 1950, plaintiff entered into a written agreement to sell and convey the leasehold estate to the defendant. Defendant has refused to accept the assignment of the plaintiff's leasehold interest, maintaining that a marketable assignment thereof cannot be made. Plaintiff therefore seeks specific performance in this action.
The basis for defendant's assertion that a marketable assignment cannot be executed is the following provision of the Heiss will, under which plaintiff received her original life interest:
"I give and bequeath to my beloved nephew Annie H. and Luther Wilcox, her husband, my residence No. 119 Main Ave., Ocean Grove, New Jersey. To be kept as a memorial during their lifetime and after the death of the said Annie H. and Luther Wilcox, her husband, I bequeath the said residue to Oscar H. Heiss of the City of Philadelphia or to his heirs and assigns."
The dwelling house upon the demised premises is in a bad state of disrepair, and is without adequate heating and plumbing facilities. The plaintiff is 85 years of age, a widow (her husband having died in 1946), and without sufficient funds with which to make the necessary repairs and to pay carrying charges, such as fire insurance and taxes.
The stipulation of facts shows that the parties also made a collateral written agreement under which the plaintiff "retains the right to use and occupy the rear room on the first floor *283 and the rear room on the second floor of the dwelling house during the term of her natural life."
These agreed facts with respect to the plaintiff's age, financial condition, condition of the house, and the reservation of the use of two rooms therein, move the compassion of a court of equity. However, they cannot form a base on which to construct a judgment favorable to her. Such a judgment must be founded upon a determination that when she added the remainder interest to her life estate she acquired the unqualified right to sell the leasehold in her lifetime, regardless of the quoted language of the will.
Although the will says, "To be kept as a memorial during their lifetime * * *," it contains no forfeiture clause and no language in anywise indicating that if the dwelling house was not "kept as a memorial" the leasehold should revert to the estate or pass immediately to the remainderman, or that the plaintiff should be divested of her life estate. No words were used which implied that the testatrix had in mind that on failure to keep the house as a memorial the life estate should terminate, such as words bequeathing a right to use and occupy "so long as" the memorial was kept.
Evidently the testatrix assumed, and perhaps hoped, that the plaintiff and her now deceased husband would continue to live on the premises for the remainder of their lives. However, an intention to require the continued occupancy during their lives cannot be gathered from the writing. Even if plaintiff had not acquired the remainder interest, it would not be reasonable to declare that she could not rent the house to a tenant. Keeping as a memorial would not require personal occupancy. A sensible interpretation would appear to be that Miss Heiss was expressing a sentimental wish that the property would represent a memorial to them but that she did not intend to command its maintenance as such under pain of forfeiture or reversion. What she intended to give to plaintiff was a life estate in memory of her.
The relations between the parties as disclosed by the stipulation support this thought. The testatrix never married. *284 She was blind for many years prior to her death and lived with and was cared for by the plaintiff and her husband.
Forfeitures under wills or deeds are not favored, and if they can be avoided on a fair and reasonable interpretation of the instrument involved, a court of equity will undertake to do so. Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444 (Ch. 1949).
There appear to be no cases in New Jersey which deal with the precise problem raised here. However, the view may be gathered from the few similar cases that in the absence of language declaring a forfeiture or directing a reverter or a gift over, failure to comply with such a wish as the language of this will imports will not produce a forfeiture. From this it must follow that a right to sell free of the asserted limitation is in existence.
In Casper v. Walker, 33 N.J. Eq. 35 (Ch. 1880), the testator gave to his wife an annuity of $400, charged on his homestead farm, which he gave to his only child, Amy. Then he added:
"It is further my will that the said Amy reside on the aforesaid farm after my decease, and take proper care of the same. In case they (I mean Amy and her husband) should not see proper to move on the same, then I order my executor to sell the same farm at public vendue to the highest bidder; but there is nothing herein contained that affects the dower of $400 devised to my wife aforesaid."
The Chancellor said:
"The devise of the homestead farm to Amy is in fee, subject to the charge of the annuity to the widow. It is not defeasible by her non-residence of the property. * * *
He not only does not provide that, in case of non-compliance with his direction, the farm shall go over to some one else, but he makes no provision whatever in that connection, except that the farm be converted by his executor into money, by sale. He makes no disposition of the proceeds of the property after conversion. * * *
There is no evidence of any intention on his part to compel his daughter to reside on the farm, as a condition of her title to it under the devise. The language of the first clause is merely expressive of his desire. It has no mandatory character, but is merely precatory."
*285 In Howell v. Patry, 50 N.J. Eq. 265 (Ch. 1892), a will directed that the part of testator's real estate then occupied by "the children of my deceased son William and his widow * * * shall remain in the said family of my son William and his said widow as long as she remains the widow of my said son for their use during their natural life, provided they live and remain on the same."
Certain of the children ceased living on the premises and it was claimed that they forfeited their life estate. Vice-Chancellor Pitney held otherwise. He said:
"* * * I do not think that it was the intention of the testator that the children of his son William should forfeit their life estate by failing to continue to live and remain upon the premises. If such had been his intention, I think he would have made a provision for the further devolution of the estate. * * * If these children all agreed among themselves to let out the premises during their lifetime to a tenant, or to sell them for the life of the longest liver, they might do so and the heirs in remainder had no cause to complain."
A clear statement of the principle which must be applied to this controversy is set forth in Whitmore v. Church of the Holy Cross, 121 Me. 391, 117 A. 469 (Sup. Jud. Ct. Me. 1922). There Justice Hanson said:
"A legacy absolute in terms, but suggesting a particular use, does not create either a condition or a trust. 11 C.J. 351 and note 27. See L.R.A. 1918 B. And a grant to a religious society, `the interest thereof to be annually paid to their minister forever,' is a gift to the society. Id.; Smith v. Nelson, 18 Vt. 511. The mere imposition upon a grantee or devisee of an obligation in respect to the use of the real estate granted or devised, without the use of technical terms to create a condition, or else of language clearly expressive of an intent that the land should revert if the obligation is not performed, will not create a condition."
All of these considerations lead to the conclusion that plaintiff's title to the leasehold is an unconditional and unqualified one and that her execution of an assignment of the leasehold will pass marketable title to the defendant. Under the circumstances a judgment for specific performance will be entered.